NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GILBERT PURCELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHUBB LTD. and FEDERAL INSURANCE COMPANY,<br><br>Defendants. | Civil Action No. 23-122 (RK) (DEA)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon Defendant Federal Insurance Company's ("Defendant" or "Federal") motion to transfer this matter to the Northern District of California. ("Fed. Br.," ECF No. 11). Plaintiff Gilbert Purcell ("Plaintiff" or "Mr. Purcell") filed a brief in opposition ("Opp. Br.," ECF No. 27), to which Defendant replied, ("Reply," ECF No. 28).[1] The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion to transfer is **GRANTED**. As such, Defendant's motion to dismiss is **DENIED WITHOUT PREJUDICE**. Defendant may refile its motion upon transfer to the Northern District of California.

---

[1] Also currently pending before the Court is Defendant's motion to dismiss, (ECF No. 13). However, the Court will not address the merits of this motion.

I.   **BACKGROUND**

This lawsuit concerns a California homeowner's insurance policy and the alleged premium overcharges by Defendant, a New Jersey insurance company.[2] Plaintiff Gilbert Purcell is a resident and homeowner in Sausalito, California. (Compl. ¶13, ECF No. 1.) In 2011, and each subsequent year thereafter, Mr. Purcell insured his home and certain personal items through an insurance policy underwritten by Federal. (*Id.*; Fed. Br. at 4.)[3] Federal is headquartered in Whitehouse Station, New Jersey and has offices across the United States, including San Diego. (Compl. ¶ 9; Fed. Br. at 8.)

While Federal provides "property insurance in all fifty states," (Compl. ¶ 9), it does not directly issue its own insurance policies, (Fed. Br. at 4). Instead, it underwrites the policies, and insurance brokers sell them. In this case, the San Francisco office of the Marsh & McLennan Insurance Agency ("Marsh") served as the insurance broker who sold the Policy to Mr. Purcell, and Federal's San Diego office underwrote the policy. (*Id.* at 4–5; Opp. Br. at 23.)

Defendant sells its homeowner insurance policies for one-year terms; thus, each year, Mr. Purcell receives a new policy. (*Id.* ¶¶ 14-15.) In July 2022, Mr. Purcell received a renewal policy (the "Policy") for the period August 26, 2022 to August 26, 2023. (Compl. ¶ 15.) The Policy stated Mr. Purcell's 2022 premium would total $35,849, as opposed to the "undiscounted price" of

---

[2] Plaintiff has sued both Chubb Ltd. ("Chubb") and Federal. (*See* ECF No. 1.) However, Chubb has not been served, and this motion is only on behalf of Federal, a subsidiary of Chubb. Accordingly, all references herein to "Defendant" refer only to Federal. The Court also notes that this opinion does not address Plaintiff's motion to amend his complaint to name additional subsidiaries, which is currently pending before the Honorable Douglas E. Arpert, U.S.M.J. (*See* ECF No. 37.)

[3] In ruling on a motion to transfer, a Court may consider facts and evidence outside of the complaint. *See Sondhi v. McPherson Oil Co.*, No. 20-13986, 2021 WL 5356182, at *2 (D.N.J. Nov. 17, 2021) ("A court may consider affidavits and other evidence outside the pleadings when adjudicating a motion to transfer under 28 U.S.C. § 1404(a)." (citations omitted)); *Smec Am. Corp v. Aggressive Hydraulics Leasing Co., Inc.*, No. 21-19465, 2022 WL 5102063, at *1 n.2 (D.N.J. Oct. 4, 2022) ("A court . . . need not accept plaintiffs' allegations if they are contradicted by the defendant's affidavits." (citations and quotation marks omitted)).

$60,078. (*Id.*) The Policy listed a number of discounts that reduced Mr. Purcell's total premium. (*Id.*) However, the Policy specified only the percentage amount of the discount, rather than the monetary figure. (*Id.*) For example, Mr. Purcell was entitled a discount of "14% for taking steps toward superior protection" and "10% for having a residential sprinkler system." (*Id.* (quotation marks omitted).)

These percentages form the foundation of this dispute. Plaintiff alleges that "[w]hen the discounts represented in the [Policy] are applied to the undiscounted 'cost,' the price of the premium should be thousands of dollars less than the premium charged." (*Id.* ¶ 19.) Plaintiff asserts he should have paid no more than $30,616 dollars in premiums, and that Defendant "regularly represent[s] false numeric percentage discounts for its homeowners [*sic*] insurance policies in order to induce customers to purchase or renew these policies." (*Id.* ¶¶ 18–19.) After he received the Policy, Mr. Purcell sought additional information regarding Defendant's premium calculations through his brokers at Marsh. (*Id.* ¶ 18; Fed. Br. at 5.) The Marsh brokers had numerous conversations with Federal, but Mr. Purcell alleges he never received clarification on Federal's calculations. (Compl. ¶ 18.) The Policy had a renewal date of August 26, 2022, and in order to ensure timely coverage, and Mr. Purcell accepted the Policy prior to obtaining an explanation for the pricing. (*Id.*)

Thereafter, on January 10, 2023, Plaintiff brought a purported class action against Federal on behalf of both a "National Class" and a "California Subclass." (*Id.* ¶¶ 27–30.) Plaintiff seeks to certify a class of those individuals "that purchased or renewed an insurance policy provided by Defendant, directly or through a subsidiary, for which Defendants failed to apply promised discounts." (Id. ¶¶ 28–29.) Plaintiff asserts violations of the New Jersey Consumer Fraud Act

3

(Count I); unjust enrichment (Count II); breach of contract (Count III); and violations of California's Unfair Competition Law ("UCL") (Count IV).[4]

On March 14, 2023, Federal moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 13.) Defendant asserts, among other arguments, that "Plaintiff's claims are squarely barred by the filed rate doctrine, which precludes private actions based on challenges to state-approved insurance rates" and that Plaintiff has failed to adequately state its claims. (ECF No. 13-1 at 1–5.) Defendant claims that, as an insurance company in California, it is required by the California Department of Insurance ("DOI") to submit and receive approval of premium rates and the underlying calculations. (*Id.* at 5.) Federal contends that the DOI in fact approved the rates that were charged to Mr. Purcell, thereby shielding them from claims under the filed rate doctrine. (*Id.* at 5–8.) Defendant concurrently filed a Motion to Transfer this dispute to the Northern District of California.

## II. **LEGAL STANDARD**

28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." A district court has "large discretion" to transfer a case under section 1404(a). *Ziemkiewicz v. R+L Carriers, Inc.*, No. 12-1923, 2013 WL 505798, at *2 (D.N.J. Feb. 8, 2013) (citations omitted). This decision involves "an individualized, fact-intensive consideration of all the relevant factors." *Id.* The first step in deciding a motion to transfer requires the Court to "determine whether the alternate

---

[4] The UCL violations are brought only on behalf of the California Subclass.

venue is one in which the case 'might have been brought.'" *Id.* (quoting 28 U.S.C. § 1404(a)); *Sondhi*, 2021 WL 5356182, at *4 (same). Venue in a civil action is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)–(3).

The second step in transfer analysis requires the Court to "consider two broad categories of factors identified by the Third Circuit." *Fasano v. Coast Cutlery Co.*, No. 11-3977, 2012 WL 1715233, at *2 (D.N.J. May 15, 2012); *accord In re: Howmedica Osteonics Corp*, 867 F.3d 390, 401 (3d Cir. 2017). The private interests include "the plaintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of the witnesses, and the location of books and records." *Smec*, 2022 WL 5102063, at *5 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). The public factors include "[t]he enforceability of the judgment, the relative administrative difficulty in the fora resulting from court congestion, the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judge[] with the applicable state law in diversity cases." *Id.* (quoting *Jumara*, 55 F.3d at 879).

## III. DISCUSSION

Federal seeks the Court to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a). (Fed. Br. at 8.) Specifically, Federal argues that "a substantial part of the events that gave rise to Plaintiff's claims occurred" there. (*Id.*) In support of its argument, Federal categorizes the dispute at issue as concerning a Northern California homeowner renewing a Policy on his Northern California home that was issued by a Northern California broker with rates approved by the California DOI. (*Id.* at 1.) Further, Federal argues that California law governs this dispute. (*Id.* at 2.)

In opposition, Plaintiff argues that the District of New Jersey is the appropriate forum, as it was his chosen forum and is the district in which Federal's headquarters are located. (Opp. Br. at 6, 14.) In addition, Plaintiff asserts that the events giving rise to this lawsuit "emanate[d] from the District of New Jersey" — namely, that Federal "presented [Mr. Purcell] with a contract that promised specific numeric discounts in exchange for Mr. Purcell purchasing the renewed insurance policy." (*Id.* at 15–16.) These representations were made at, and mailed from, Federal's headquarters. (*Id.*) Plaintiff further argues that the California filed rate doctrine has no bearing on this dispute, and New Jersey law governs most of the alleged claims. (*Id.* at 8–13.)

### A. VENUE IN THE NORTHERN DISTRICT OF CALIFORNIA

At the outset, the Court must decide whether venue would be proper in the transferee district. *R+L Carriers*, 2013 WL 505798, at *2. Venue is proper either in the district "in which any defendant resides" or the "district in which a substantial part of the events or omissions giving rise to the claim occurred." § 1391(b)(1)–(2). Because Defendant is a corporation, it is deemed to reside, and thus venue is proper, "in any judicial district in which such defendant is subject to the court's personal jurisdiction." § 1391(c)(2); *accord In re Consol. Parlodel Litig.*, 22 F. Supp. 2d

6

320, 323 (D.N.J. 1998). In this regard, Defendant has consented to personal jurisdiction in the transferee district, and Plaintiff does not dispute that venue would be proper in the Northern District of California. (*See* Fed. Br. at 10 n.4.) In addition, the Court also notes that numerous events underlying this dispute occurred in the transferee district. Notably, Mr. Purcell resides in Northern California, and it was there he received and accepted the Policy for insurance on his Northern California home. (Fed. Br. at 4.) In addition, Mr. Purcell used an insurance broker in that district. (*Id.*) Therefore, the Court finds that this action may have been brought in the Northern District of California pursuant to § 1391(b)(1)–(2).

**B.     PRIVATE FACTORS**

The parties dispute whether, and to what extent, the Court should honor Plaintiff's choice of forum, the first private factor in the § 1404(a) analysis. (*See* Fed. Br. at 11; Opp. Br. at 19.) Typically, a plaintiff's choice of forum is "given great weight." *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 321 (D.N.J. 1998). However, "Plaintiff's choice is accorded less weight when the chosen forum is not the plaintiff's home forum." *LG Elecs., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 589 (D.N.J. 2001). Moreover, when a plaintiff "sues representatively on behalf of a class", the plaintiff's choice of forum becomes "substantially less important" because "the named plaintiff's testimony and other input is likely to be minimal." *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 228 (D.N.J. 1996). In addition, "when the central facts of a lawsuit occur outside the chosen forum, plaintiff's choice . . . is accorded less weight." *LG Elecs.*, 138 F. Supp. 2d at 590 (citations and quotation marks omitted).

The District of New Jersey is a foreign forum to Mr. Purcell, who is a resident of California. Further, Plaintiff has sued on behalf of a purported class of individuals who were allegedly deceived by Defendant. While the parties dispute where the "central facts" of the case occurred,

7

several key facts — including where Plaintiff received, accepted, and inquired about the Policy — transpired in the Northern District of California. Accordingly, the Court finds this factor weighs in favor of Plaintiff; though, given the above considerations, that weight is slight.

With respect to the second factor, Defendant has indicated a strong preference in favor of transfer. Notably, it has consented to personal jurisdiction in a foreign district court. This factor weighs in favor of transfer.

Next, the Court considers where the claims underlying the litigation arose. As discussed above, the parties vehemently disagree. Plaintiff asserts that Defendant's "marketing and promising of discounts which it did not honor" occurred in the District of New Jersey. (Opp. Br. at 20.) Defendants, on the other hand, argue that Plaintiff's claims arose in the Northern District of California, as "Plaintiff received the Policy there, the broker that obtained the Policy for him was located there, Plaintiff's discussions with the broker took place there, Plaintiff paid his premiums there, and the insured property was there." (Fed. Br. at 12.) This framing impacts the weight afforded to this factor. *Compare Tang v. Eastman Kodak Co.*, No. 20-10462, 2021 WL 2155057, at *6 (D.N.J. May 27, 2021) ("[I]n the context of claims based on misrepresentations or omissions . . . the misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they are received." (citations and quotation marks omitted)) *with Tela Bio, Inc. v. Fed. Ins. Co.*, No. 16-866, 2016 WL 6246768, at *4 (D.N.J. Oct. 25, 2016) (finding that "Plaintiffs' claims against [Federal] arose in Pennsylvania" where Pennsylvania residents "negotiated and executed the Policy in Pennsylvania with a Philadelphia broker," even though Federal's headquarters are in New Jersey). The Court does not consider the parties' divergent positions on the issue, or the issue itself, dispositive. Therefore, the Court considers this factor as neutral and in equipoise.

The Court subsequently considers "the convenience of the parties as indicated by their relative physical and financial condition." *Smec*, 2022 5102063, at *5. The parties make similar arguments, albeit ones that come out in opposite conclusions. Plaintiff, a California resident, argues that it filed the case in New Jersey, and thus consents to litigation in this district. (Opp. Br. at 22.) Defendant, on the other hand, headquartered in New Jersey, acquiesces to litigation in the Northern District of California in support of its motion to transfer. (Fed. Br. at 7.) Neither party indicates an inability to travel or alleges financial hardship associated with litigating this case. However, since Plaintiff is a resident of Northern California, he would face less burden litigating in California than in New Jersey. Further, Defendant, a corporation, more likely can endure the increased expense greater than an individual. Therefore, this factor weighs in favor of transfer.

Both parties argue that the convenience of potential witnesses turns in their favor. Defendant notes that Plaintiff, the Federal employee who underwrote the Policy, the Marsh brokers who corresponded with Federal and Plaintiff, all reside in the Northern District of California. (Fed. Br. at 14.) Plaintiff points to "the material witnesses — those involved in the business practice of promising discounts throughout the United States which Defendant would not honor — are within the state of New Jersey."[5] (Opp. Br. at 22.) However, "the convenience of non-party witnesses is accorded greater weight . . . than party witnesses." *Nat'l Prop. Invs. VIII v. Shell Oil Co.*, 917 F. Supp. 324, 329 (D.N.J. 1995). Defendant identifies two brokers at Marsh, a third party, who reside in the Northern District of California and "who obtained the Policy for Plaintiff and corresponded with Plaintiff about the policy premiums." (Fed. Br. at 14.) Based on Defendant's articulation of

---

[5] Plaintiff, for example, points to a LinkedIn profile of an executive allegedly responsible for "all Chubb general insurance business in the United States." (Opp. Br. at 16–17.) However, Plaintiff fails to allege any facts connecting this individual to Defendant's marketing practices outside from the claims in his LinkedIn profile. While the Court agrees this executive may be in New Jersey, his role as a key witness in this case is too speculative to accord potential purported testimony any weight.

the dispute, these third-party witnesses will play key roles. Therefore, this factor weighs in favor of transfer.

The final private factor for the Court's consideration is the "location of books and records." *Smec*, 2022 WL 5102063, at *5. While Defendant argues its key documents are in California, (*see* Fed. Br. at 15), and Plaintiff does not dispute this fact, (*see* Opp. Br. at 24), "technological advances of recent years have significantly reduced the weight of [this factor] in the balance of convenience analysis." *Tang*, 2021 WL 2155057, at *8 (alternations in original) (citing *Lomanno v. Black*, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003)). The Court agrees with Plaintiff that the "parties can easily produce relevant documents electronically." (Opp. Br. at 24.) Thus, the Court finds this factor neutral.

### C.   PUBLIC FACTORS

Following a review of the private factors, the Court considers the "public interests" to decide whether transfer is warranted. *Howmedica Osteonics*, 867 F.3d at 401. First, the Court agrees with both parties that the judgment could be enforced in either district, and therefore, this factor is neutral. (*See* Fed. Br. at 15; Opp. Br. at 24.) The parties disagree whether transfer would serve practical considerations such as cost and the speed of resolution. As with other factors, this analysis turns on a framing of the dispute. Both parties argue that the material witnesses are located in their preferred venue, which serves the Court's interest in a speedy resolution. (*Compare* Fed. Br. at 15 ("Because Plaintiff, the Federal underwriter, and all other key witnesses are in California, transferring this case to the Northern District of California will make trial more expeditious and inexpensive.") *with* Opp. Br. at 24 ("Because Defendant and the key witnesses are in New Jersey, transferring the case to California would make trial more expensive and less expeditious.").) It may be correct that transfer would increase one party's expense while decreasing the other's. Both

parties have articulated different views of the case, with witnesses in the various locations playing key roles. At this early juncture of the litigation, both parties' contentions are theoretically plausible. Accordingly, the Court refrains from assigning any weight to this factor.

Next, the congestion in the respective district courts weighs in favor of transfer. *See Shell Oil Co.*, 917 F. Supp. at 329 (transferring case from New Jersey to North Carolina in part because "[t]he relative backlog and caseloads of the two districts . . . supports a transfer of venue"). As Defendant points out, and Plaintiff does not dispute, "the District of New Jersey had 63,097 civil cases and 1,544 criminal cases pending during the 12-month period ending September 30, 2022, while the Northern District of California had only 11,077 civil cases and 946 criminal cases." (Fed. Br. at 16; *see also* Opp. Br. at 25.) This factor supports a transfer to the Northern District of California.

The next two public factors, the local interest in deciding local controversies and New Jersey's public policy, similarly cut both ways. Depending on how this case is framed — whether as a misrepresentation claim originating from Defendant's New Jersey corporate headquarters or as one where a California resident was overcharged for an insurance policy on his California home — this factor could support both parties. New Jersey has an interest in ensuring its businesses do not defraud consumers, while California has an interest in protecting its citizens. *See Fasano*, 2012 WL 1715233, at *7 (explaining that one forum "has a local interest in regulating the conduct of its corporations" while another has "an interest in having a case tried that involves allegations that one of its citizens was the victim of violations of" that state's laws). However, Plaintiff brings a purported class action on behalf of both a "National Class" and a "California Subclass." (Compl. ¶¶ 29–30.) The Complaint alleges violations of California's Unfair Competition Law on behalf of the California Subclass only. (*Id.* ¶ 58.) On balance, California has a greater interest in deciding a

controversy that includes a subclass comprised of its citizens, and thus, the Court deems this factor in favor of transfer.

Similarly, this framing dictates whether the public policy of New Jersey weighs in favor of or against transfer. As Defendant explains, "New Jersey 'has a public policy to reserve its limited judicial resources, or at least not waste them on litigation with no meaningful connection to the state.'" (Fed. Br. at 17 (quoting *Tang*, 2021 WL 2155057, at *10).) To Plaintiff, "New Jersey's public policy weights against a transfer" as "New Jersey . . . has an interest in enforcing its own laws." (Opp. Br. at 26 (quoting *Acker v. Ray Angelini, Inc.*, 259 F. Supp. 3d 305, 314 (E.D. Pa. 2016). As such, the Court finds this factor largely neutral.

Finally, the Court considers the "familiarity of the trial judge[] with the applicable state law." *Smec*, 2022 5102063, at *5. A key issue in this lawsuit, as evidenced by both parties' motions, is the interplay between Plaintiff's claims and the filed rate doctrine under California law. Defendant argues that "Plaintiff's claims are barred by the filed rate doctrine . . . because Federal's method of calculating Plaintiff's premium discounts was specifically approved by the California DOI." (Fed. Br. at 6–7.) Plaintiff, on the other hand, believes the "[c]aselaw confirms that the filed rate doctrine has no bearing on cases involving insurance rates in California," and New Jersey law applies to the majority of its claims.[6] (Opp. Br. at 8–9.) How California state courts interpret the filed rate doctrine, therefore, is central to whether this case proceeds. While it is true that "federal district courts are regularly called upon to interpret the laws of jurisdictions outside of the states in which they sit," *Fasano*, 2012 WL 1715233, at *7, it is undisputed that a court in California is better situated to interpret its own laws. *Shell Oil Co.*, 917 F. Supp. at 330 (transferring case to North Carolina where doing so "would avoid this Court applying unfamiliar law"). California has

---

[6] For purposes of this motion to transfer, the Court need not resolve which state's law applies to this case and does not issue an opinion as to same.

12

an interest in ensuring its state insurance laws are applied correctly. Therefore, the Court finds this factor weighs heavily in favor of transfer. Overall, the Court finds that the public factors support transfer to the Northern District of California.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Transfer is **GRANTED**. All remaining motions pending on the docket are dismissed without prejudice and may be refiled upon transfer to the Northern District of California. An appropriate Order will accompany this Opinion.

                                                      _____
                                                      **ROBERT KIRSCH**
                                                      **UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: August 23, 2023